IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,

Plaintiff,

v.

DAVID R. GIBSON,
ROBERT V.A. HARRA,
WILLIAM B. NORTH, and
KEVYN RAKOWSKI,

Defendants.

Crim. Action. No. 15-23-RGA

MEMORANDUM ORDER

The Government filed a motion regarding defense expert witnesses. (D.I. 379). Defendants filed a response. (D.I. 395).[1] The Court held oral argument. (D.I. 539). Following Wilmington Trust Co.'s dismissal from the case on October 12, 2017 (D.I. 583), the Government filed a second motion regarding defense expert witnesses (D.I. 628), to which Defendants responded (D.I. 642). The Court held oral argument on February 12, 2018. (D.I. 655).

The Government's original motion raised two general arguments, the second of which was that Wilmington Trust's[2] disclosures of expert testimony did not comply with Federal Rule of Criminal Procedure 16(b)(1)(C). (D.I. 379 at 1). That rule requires a defendant to disclose a "written summary" of intended expert testimony, to include "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim P. 16(b)(1)(C). The Government submitted that the opinions and the bases and reasons for those opinions were

[1] Wilmington Trust Co. filed the response. The individual Defendants joined. (D.I. 402, 404, 407, 410).

[2] Because Wilmington Trust took the lead on many of these arguments and motions, I sometimes refer to Wilmington Trust or "the Bank."

inadequately disclosed. (D.I. 379 at 1). In particular, at issue were the disclosures related to experts Pelagatti, Siefert, and Lawrence.[3] The Government now argues in its second motion that the supplemental disclosures related to Pelagatti remain deficient. (D.I. 628 at 5). In particular, the Government maintains that those disclosures "(1) fail to confine the universe of relevant auditing standards, as directed by the Court; and (2) introduce a large list of peer banks whose unspecified disclosures Mr. Pelagatti will testify about at trial." (*Id.*).

As to the Government's first argument, I explained on February 12th that I think the supplemental disclosure, which identifies thirty-six auditing standards, is generally consistent with Wilmington Trust's previous representations in regard to narrowing the universe of relevant standards. (*See* D.I. 655 at 88:16–25). The Government indicated that it may request additional disclosures related to those standards depending upon how I rule on the substantive issues presented by Pelagatti's proposed testimony. (*See id.* at 88:3–6, 89:1–8, 10–12).

As to the Government's second argument, Defendants agreed at the hearing to narrow their disclosure in regard to the sixty-seven peer banks Pelagatti may discuss to support his opinions. (*Id.* at 95:10–13). Defendants agreed to narrow that disclosure by February 26, 2018. (*See id.* at 95:20–25).

In terms of Pelagatti's opinions, I see four in the September 2, 2016 written disclosure. (D.I. 379-1, Exh. A). I would summarize them as: (1) authoritative audit guidance can be found in the generally accepted auditing standards of the Public Company Accounting Oversight Board (United States); (2) a bank could reasonably rely on the opinions of its external auditor regarding

[3] Schott was at issue, but I understand he is not going to be called as a witness. (D.I. 559 at 3). James was also addressed in the briefing, but it appears that Defendants do not intend to call him as a witness, and he was not discussed at the argument in September.

whether SEC filings appropriately applied generally accepted accounting principles and "predominant banking practices;" (3) authoritative accounting and audit guidance relevant to SEC filings can be found in US GAAP, FASB Accounting Standards Codifications, rules and interpretive SEC releases, US GAAS, and "predominant practices;" and (4) under GAAP and other "authoritative accounting and financial reporting disclosures guidance," there were "multiple reasonable interpretations" as to how to report "matured, current for interest loans that are in the process of renewal or extension," and that it was "reasonable not to report such loans as past due."

At argument on September 23, 2017, Wilmington Trust said Pelagatti's testimony would include: (1) how audits work (D.I. 539 at 64:13–16)[4]; (2) customs and practices with respect to reporting past due loans (*id.* at 64:16–19)[5]; (3) customs and practices with respect to dealing with the external auditor (*id.* at 66:5–17; 78:1–80:19)[6]; (4) how the KPMG audit of the Bank worked specifically (*id.* at 76:1–3)[7]; and (5) relevant changes to GAAP during the relevant time period (*id.* at 96:22–98:22).[8]

[4] I do not think the Government objects to the disclosure or the substance of such testimony. (D.I. 539 at 67:16–22).

[5] The Government objects to this both on deficient disclosure and on substance. (D.I. 539 at 91:4–92:9; 101:1–102:14). Wilmington Trust stated that in one respect it would supplement its disclosures, to state which banks Pelagatti examined as support for his opinions as to what other banks were doing. (*Id.* at 103:14–23).

[6] With one exception, the Government does not object to this testimony. (D.I. 539 at 81:14–82:3; 96:12–21).

[7] I understand that he is not going to be offering any opinions, good or bad, about the quality of KPMG's work. (D.I. 539 at 75:23–77:7).

[8] Wilmington Trust stated it would "specifically" identify which GAAP standards Pelagatti would discuss. (D.I. 539 at 98:12-13).

I think three issues remain in regard to Pelagatti.[9] The first is to what extent he has to explain the bases of his opinions about what other banks do. The second is whether he can testify as to what is reasonable for Defendants to infer from KPMG's silence on an issue. The third is whether he can testify about whether Defendants' interpretation of "past due loans" is a reasonable interpretation.

First, as I understand it from the argument in September, Pelagatti would testify that it was a custom and practice of banks during the relevant time period to report loans as past due, or not to report them as past due, based on some set of criteria. The basis for his opinions was said to be solely from experience as an outside auditor auditing banks in this region during that time period. (*Id.* at 95:7–19). He has not disclosed any banks whose practices are the basis for his conclusions about what banks generally did. (*Id.* at 96:6-7; 98:23–99:4). Subsequent to the argument, and showing some flexibility in approach, Wilmington Trust submitted a supplemental memorandum stating that Pelagatti could offer the same opinions without relying upon his experience as an outside auditor. (D.I. 555 at 7).[10] The Bank also suggested that he

---

[9] In addition to these three issues, the Government argued in its second motion that (1) certain opinions of Defendants' experts are inadmissible because they evaluate the credibility of other witnesses (D.I. 628 at 7) and (2) testimony about KPMG's audit of Wilmington Trust should be excluded because it is unnecessary and inadmissible under Rule 702 (*id.* at 11). Those arguments were addressed and resolved on February 12th. In particular, Defendants represented that they will not elicit testimony from their experts as to the credibility of other witnesses, and I accepted that representation. (*See* D.I. 655 at 101:12–21). Further, I rejected the Government's argument that testimony regarding KPMG's audit would not be helpful to the jury. (*See id.* at 103:3–10).

[10] The opinion would be based "solely on his education, review of industry and regulatory standards, and conversations with fellow auditors."

I note that the individual Defendants generally joined motions and other filings by Wilmington Trust through a formal motion to join. To the extent the individual Defendants did not file a motion to join certain documents mentioned in this order, I treat them as having joined

could testify based upon experience but refuse to identify his clients on cross-examination. (*Id.* at 5).

I do not think having a dispute before the jury about what Pelagatti has to disclose is a good idea. It would be an irrelevant and confusing sideshow. I also do not think that having an opinion based on nothing but confidential information that cannot be disclosed to the jury is admissible expert testimony. It is the essence of *ipse dixit* testimony. There is no way effectively to test its reliability. On the other hand, I think it is possible he can base his opinions on the other grounds upon which he now relies. In any event, I stated at the February 12th hearing that I thought it would be helpful to hold a *Daubert* hearing in regard to Pelagatti's proffered customs and practice testimony. That hearing is now scheduled for February 27, 2018. (D.I. 653).

The second and third issues relate to Pelagatti's opinions on reasonableness. The parties generally agree that Pelagatti can testify about the interactions between the Bank and its auditor, and what the expectations of the Bank would be from its auditor. The point of dispute is whether Pelagatti can testify that it would be reasonable for Defendants to conclude from KPMG's lack of an audit finding that faulted the Bank's handling (including the "waiver practice" and the "mass extension") or reporting of past due loans that there was no issue with the way the Bank handled or reported past due loans. (D.I. 539 at 84-85). The Government says that such testimony would be inadmissible under Rule 704(b), which states, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state .

---

since that seemed to be the understanding of Wilmington Trust and the individual Defendants at the time.

. . that constitutes an element of the crime charged or a defense. Those matters are for the trier of fact alone."

His other reasonableness opinion is that Defendants could have reasonably concluded that the way the Bank handled past due loan reporting would comply with reporting requirements. (*Id.* at 91-92). The Government says the proposed testimony is inadmissible under the authority of *Berckeley Investment Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006).[11] The take-away that the Government has from *Berckeley* is that an expert's testimony that "in light of the . . . routine industry practice it was reasonable for [plaintiff] to have believed that it was entitled [to an exemption under the securities laws] is inadmissible because it concerns [plaintiff's] legal duties resulting from the various SEC pronouncements." *Id.* at 218. In its briefing, Wilmington Trust did not seem to disagree with the Government's view, arguing instead that *Berckeley* required the exclusion of various Government experts' opinions as well as Pelagatti's opinion that "'the accounting for and recognition of matured, current for interest loans that are in the process of renewal or extension for banks was subject to multiple reasonable interpretations.'" (D.I. 379 at 3). (I have separately excluded the Government experts' opinions about the interpretation of "past due loans." (D.I. 559 at 1-2)). Further, at argument, Wilmington Trust recognized that it could obtain much of what it seeks without testimony about the legal duties arising from industry practices.

I think the two "reasonableness" opinions present different issues. As to the first, I expect that the jury will be able to decide whether Defendants could, or could not, infer

[11] The Government also cites *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991), which includes the proposition that "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admiss[i]ble, and may not be made so simply because it is presented in terms of industry practice."

something from KPMG's actions or inactions. There is going to be substantial evidence, and, I expect, disputes about what was, or was not, told to KPMG. This will include Pelagatti's testimony about the nature of a bank/auditor relationship, including what an auditor is supposed to do. It will be up to the jury to sort out, from what is likely to be a complex and disputed set of facts, what Defendants might have inferred. I do not think it would be helpful for the jury to be told generally that a bank could take silence from an auditor to mean approval, or lack of disapproval. *See* Fed. R. Evid. 701(b). Thus, Pelagatti is **PRECLUDED** from testifying that a bank in general, or Defendants in particular, could rely upon the silence of an auditor in general, or KPMG in particular, to reach a conclusion about the appropriateness of the conduct that was not commented upon. Of course, Defendants can make that argument to the jury, based on Pelagatti's expected testimony about what "an auditor's obligations are," "what it means for [an auditor] to sign on the financials and what under the auditing standards their obligations are before they do that." (D.I. 539 at 86; *see id.* at 85:1–4).

As to the second "reasonableness" opinion, based on *Berckeley*, I think the Government has the better of the argument. Thus, assuming *Daubert* requirements are met, Pelagatti can testify as to what the customs and practices of the banking industry were in relation to reporting past due loans, but he cannot opine on whether the customs and practices were legal or reasonable. Pelagatti is **PRECLUDED** from testifying that the Bank's reporting of past due loans was a reasonable interpretation of what the law required, or that there were multiple reasonable interpretations of the legal requirements.

IT IS SO ORDERED this 20 day of February 2018.

United States District Judge